## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SREAM, INC.,**<br>     **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-8177 c/w**<br>     **17-8179, 17-8180,** |
| **SUPERIOR DISCOUNT, LLC,**<br>     **Defendant** | **17-8184, 17-8186,**<br>**17-8191, 17-8193,**<br>**17-8205, 17-8216,**<br>**17-8218, 17-8238,**<br>**17-8242, 17-8243,**<br>**17-8244, 17-8246,**<br>**17-8252** |
| *Applies to: 17-8243* | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss filed by Counter-Defendants Sream, Inc. ("Sream") and Roor International BV ("Roor").[1] The motion is opposed.[2] For the reasons that follow, the motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

On August 25, 2017, Sream filed suit against Defendant Quicky's Discount ("Quicky's"), alleging Quicky's sold counterfeit merchandise bearing the RooR mark. Sream asserted two causes of action: (1) a claim for trademark counterfeiting and infringement under 15 U.S.C. § 1114 and (2) a claim for false designation of origin and unfair competition under 15 U.S.C. § 1125(a). The Court determined Sream lacks standing to assert a claim under 15 U.S.C. § 1114 because its status as licensee does not equate it to

---

[1] R. Doc. 90.
[2] R. Doc. 92.

an assignee.[3] The Court dismissed Sream's claim under 15 U.S.C. § 1114 and granted Sream leave to amend its Complaint to add Roor as a plaintiff.[4]

On March 11, 2019, Sream and Roor filed an amended complaint adding Roor as a plaintiff.[5] In the amended complaint, both Roor and Sream assert a claim for false designation of origin and unfair competition under 15 U.S.C. § 1125(a). Roor alone asserts a claim for trademark counterfeiting and infringement under 15 U.S.C. § 1114.

Roor alleges it is the owner of the following trademarks:

(a) U.S. trademark registration number 3,675,839 for the mark "RooR" and its logo in association with goods in international class 34, including "smoker's articles, namely glass pipes, bongs, water pipes, [and] water pipes of glass;"

(b) U.S. trademark registration number 2,307,176 for the word mark "RooR" and its logo in association with goods in international class 25 for "clothing, namely, shirts, pants, jackets, sweaters, socks, hats, caps and footwear" and class 34 for "smoker's articles, namely cigarettes, cigars, tobacco, pouches, humidors, tobacco spittoons, chewing tobacco, smoking tobacco and matches;" and

(c) U.S. trademark registration number 2,235,638 for the word mark "RooR" and its logo in association with goods in international class 21 for glass bowls, glass boxes, glass beverageware and bowls, glass rods, stoppers, and glass tubes not for scientific purposes.

(d) Common law and unregistered state law rights in the following variants of the registered "RooR trademarks.[6]

In its Answer, Quicky's asserts counter-claims against Sream and Roor.[7] In count one, Quicky's seeks a declaration that the registered trademarks are invalid and seeks cancellation of the trademark registrations pursuant to 15 U.S.C. § 1119.[8] In count two,

---

[3] R. Doc. 76.
[4] *Id.*
[5] R. Doc. 77.
[6] *Id.* at ¶ 11; *see also* R. Doc. 77-2.
[7] R. Doc. 79.
[8] *Id.* at ¶¶ 10-64

Quicky's requests a declaratory judgment that the trademarks, both registered and unregistered, are invalid and unenforceable.[9] In count three, Quicky's asserts a cause of action for abuse of process, seeking damages, attorneys' fees, and costs.[10]

On April 15, 2019, Sream and Roor filed a motion to dismiss the counter-claims asserted by Quicky's, pursuant to Federal Rule of Civil Procedure 12(b)(6).[11] Sream and Roor argue Quicky's fails to state a claim for cancellation of the trademarks, is not entitled to a declaratory judgment that the trademarks are invalid, and fails to state a claim for abuse of process.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[12] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[13] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[15] "[T]hreadbare

---

[9] *Id.* at ¶¶ 65-79.
[10] *Id.* at ¶¶ 80-97.
[11] R. Doc. 90.
[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[14] *Id.*
[15] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[16]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[17] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[18] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[19]

## LAW AND ANALYSIS

### I. Cancellation of the Marks

In Count one, Quicky's seeks a declaration that Roor's three registered trademarks are invalid and an order cancelling the registration of the three registered marks.[20] Section 37 of the Lanham Act, 15 U.S.C. § 1119, grants federal courts the authority to "order the cancellation of registrations . . . and otherwise rectify the register with respect to the registrations of any party." The party seeking cancellation must prove two elements: (1) that it has standing; and (2) that there are valid grounds for cancelling the registration.[21]

"Standing is the more liberal of the two elements and requires only that the party seeking cancellation believe that it is likely to be damaged by the registration."[22] Quicky's is the defendant in this action for trademark infringement and, as a result, has standing to seek cancellation of the RooR trademarks.

---

[16] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[17] *Twombly*, 550 U.S. at 555.
[18] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[19] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[20] R. Doc. 79 at ¶¶ 10-64.
[21] *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000).
[22] *Cunningham*, 222 F.3d 943 at 945.

A federal court is limited by the same grounds for cancellation as is the U.S. Patent and Trademark Office ("USPTO").[23] After a mark has been registered for five years, the mark becomes "incontestable."[24] The RooR marks were registered between 1999 and 2009 and, as a result, are "incontestable."[25] An incontestable mark is subject to cancellation only upon certain enumerated grounds, including: (1) that the mark has been abandoned or (2) that the registration was obtained fraudulently, among others.[26] Quicky's alleges the RooR marks should be cancelled because the marks have been abandoned and because the registrations were obtained through fraud.

### A. Abandonment

A registration can be cancelled at any time if the registered mark has been abandoned.[27] Under the Lanham Act, a mark is considered abandoned when its use has been discontinued with the intent not to resume; nonuse for three consecutive years is prima facie evidence of abandonment.[28] "Use" of a trademark requires lawful use in commerce in the United States.[29] It has long been the policy of the USPTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is lawful.[30]

---

[23] *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 203 (1985).
[24] 15 U.S.C. §§ 1064-1065; 15 U.S.C. § 1115(b).
[25] R. Doc. 79-1 at 2-4.
[26] 15 U.S.C. §§ 1064-1065; 15 U.S.C. § 1115(b).
[27] 15 U.S.C. § 1115(b)(2); 15 U.S.C. § 1064(3).
[28] 15 U.S.C. § 1127.
[29] *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 628 (9th Cir. 2007); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000); *Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1579 (Fed. Cir. 1990); *Rivard v. Linville*, 133 F.3d 1446, 1449 (Fed. Cir. 1998).
[30] *CreAgri*, 474 F.2d at 630 (citing *United Phosphorus*, 205 F.3d at 1225; *In re Midwest Tennis & Track Co.*, 29 U.S.P.Q.2d 1386, 1386 n. 2, 1993 WL 562977 (T.T.A.B. 1993); *Clorox Co. v. Armour–Dial, Inc.*, 214 U.S.P.Q. 850, 851, 1982 WL 50434 (T.T.A.B. 1982); *In re Pepcom Indus., Inc.*, 192 U.S.P.Q. 400, 401, 1976 WL 21138 (T.T.A.B. 1976); *In re Stellar Int'l, Inc.*, 159 U.S.P.Q. 48, 51, 1968 WL 8159 (T.T.A.B. 1968)).

Quicky's alleges the following facts with respect to the abandonment of the registered RooR marks through nonuse:

> Registration Nos. 2235638 and 3675839 have been abandoned for failure to ever have lawful use in commerce.[31]
>
> Registration No. 2235638 applies to "glass pipes, bongs, water pipes, [and] water pipes of glass." These goods are expressly identified in the [Controlled Substances Act] as "drug paraphernalia."[32]
>
> Registration No. 3675839 applies to "glass bowls, glass boxes, glass casters, glass beverage ware and bowls, glass rods, stoppers, [and] glass tubes not for scientific purposes." Although innocuously described in the registration as common household items, in reality, the goods covered by this registration are the component parts of a bong.[33]
>
> [T]he goods covered by Registration No. 2307176 have been abandoned . . . [because they] have never been on sale or transported in the United States. For example, internet searches for "ROOR cigarettes" or "ROOR cigars" or "ROOR tobacco" turn up zero results. Moreover, these products are not mentioned in Sream's license agreement and Sream holds itself out as "exclusive licensee" of ROOR brand in the United States . . . For example, internet searches for "ROOR socks" or "ROOR pants" or "ROOR footwear" turn up zero results. Internet searches for "ROOR shirts" return results in the German language on the German ROOR website, but no availability in the United States. No clothing items are available for sale on the U.S. website for ROOR.[34]

Quicky's alleges the goods covered by the RooR registrations have either never been used in commerce, or have never been in lawful use in commerce in the United States, and sets forth sufficient facts to support its claim. As a result, the motion to dismiss Quicky's claim for cancellation under 15 U.S.C. § 1119 due to abandonment is denied.

---

[31] R. Doc. 79 at ¶ 39.
[32] *Id.* at ¶ 18.
[33] *Id.* at ¶¶ 19-20.
[34] *Id.* at ¶ 40.

## B.    Fraudulently Obtained Registration

A registration can be cancelled at any time if the registration of the mark was obtained fraudulently.[35] Federal Rule of Civil Procedure 9(b) requires fraud be pled with specificity. Cancellation of a trademark due to fraud on the USPTO in connection with the registration requires proof of the following elements: (1) a false representation of a material fact; (2) knowledge or belief that the representation was false; (3) an intent to induce the USPTO to act in reliance on the misrepresentation; (4) reasonable reliance by the USPTO on the misrepresentation; and (5) damage from such reliance.[36]

Quicky's alleges the following facts with respect to fraud in obtaining the registrations of the RooR marks:

> All three ROOR trademark registrations were obtained by fraud. In applying to register the ROOR marks, Birzle knowingly made false statements to the USPTO about material aspects of his applications with the intent that the USPTO rely upon his false and misleading representations to issue a certificate of registration that he was not entitled to.[37]

> Whether goods or services are in "lawful use" in U.S. commerce is a material element of a trademark application.[38]

> In filing to register the ROOR Marks, Birzle falsely represented that his marks were lawfully used in commerce or that he had the bona fide intent to use the marks lawfully in commerce. In fact, the goods covered by the Registration Nos. 3675839 and 2235638 are illegal under the [Controlled Substances Act]. These false representations were made with the intent to deceive the USPTO and constitute fraud on the office.[39]

> Birzle and the attorney who filed the applications which matured into Registration Nos. 2235638 and 3675839 knew that the goods constituted drug paraphernalia intended for use and use[d] in ingesting marijuana.[40]

---

[35] 15 U.S.C. § 1115(b)(1); 15 U.S.C. § 1064(3).
[36] *Tex. Pig Stands, Inc. v. Hard Rock Cafe Intern., Inc.*, 951 F.2d 684, 693 n. 14 (5th Cir. 1992).
[37] R. Doc. 79 at ¶ 50.
[38] *Id.* at ¶ 52.
[39] *Id.* at ¶ 61.
[40] *Id.* at ¶ 51.

Birzle intentionally withheld information about the true nature of his goods. For example, in submitting his first specimen of use for U.S. Registration No. 2235638 on January 27, 2005, Birzle, through his attorney, filed the following at the USPTO. By submitting truncated images showing only the central portion of the product, Birzle hid from the USPTO that the products that he sought to maintain on the U.S. Register were, in fact, bongs – not mere "glass tubes not for scientific purposes."[41]

At the times that Birzle applied for his second trademark registration [No. 2307176], he knew that he had no evidence that he sold apparel or tobacco products in the U.S. market. Instead of filing truthful paperwork with the USPTO to document use in U.S. commerce, Birzle fraudulently submitted evidence of hats denominated in euros and a box for rolling papers (but no tobacco product such as cigarettes or cigars).[42]

Rolling papers are not listed in the goods covered by Registration No. 2307176. Moreover, Birzle's rolling papers are not intended for use with tobacco, they are complimentary products for the goods for which Birzle claims renown: high-end, designer bongs used to ingest marijuana.[43]

Birzle . . . knew at the time he made his filings with the USPTO that the goods covered by Registration Nos. 2235638 and 3675839 were items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana into the human body. Likewise he knew that the goods covered by Registration No. 2307176 were not in use in the United States.[44]

Because of these misrepresentations, Birzle obtained his ROOR registrations fraudulently.[45]

Quicky's pleads sufficient facts which, taken as true, support its claim for cancellation of the registrations under 15 U.S.C. § 1119 as fraudulently obtained. Quicky's also specifically pleads fraud as required by Rule 9(b). Quicky's alleges Birzle made false representations regarding a material fact when he represented to the USPTO that his marks were in lawful use in commerce. [46] Quicky's alleges Birzle knew these

---

[41] *Id.* at ¶ 53.
[42] *Id.* at ¶ 55.
[43] *Id.* at ¶ 56.
[44] *Id.* at ¶ 62.
[45] *Id.* at ¶ 64.
[46] *Id.* at ¶¶ 50-53, 62.

representations were false and made them for the purpose of inducing the USPTO to issue the registrations. [47] Quicky's alleges the USPTO reasonably relied on these representations and issued registration numbers 3675839, 2307176, and 2235638 with respect to the RooR mark. [48] Accordingly, the motion to dismiss Quicky's claim for cancellation of the RooR trademarks under 15 U.S.C. § 1119 due to fraud in obtaining the registration is denied.

## II.    Declaration of Invalidity

In count two, Quicky's seeks a declaration that both the registered trademarks and the unregistered common law trademarks are invalid. [49] Quicky's alleges, "[b]ecause the registered and unregistered RooR . . . marks are invalid, a finding and declaration of invalidity and unenforceability should be entered." [50] Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a federal court "may declare the rights and other legal relations of any interested party." In a trademark infringement action, a defendant sued for infringement is permitted to counterclaim for cancellation of the mark and seek a declaratory judgment that the mark is invalid. [51] Quicky's alleges the registered and unregistered trademarks are invalid and unenforceable because the products sold under these marks are illegal drug paraphernalia and because the products have either never been used in commerce or never been lawfully used in commerce. [52]

---

[47] *Id.* at ¶ 51, 55.
[48] *Id.* at ¶ 64.
[49] *Id.* at ¶¶ 65-79.
[50] *Id.*  at ¶ 79.
[51] *Green Edge Enter., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1300 (Fed. Cir. 2010).
[52] R. Doc. 79 at ¶ 71. Quicky's also alleges the unregistered, common law trademarks are invalid because the marks have been abandoned due to naked licensing. Because the Court denies the motion to dismiss on the basis that Quicky's properly alleges the unregistered marks are invalid because they are not in lawful use, the Court declines to address this argument.

"[T]he general principles qualifying a mark for registration . . . are for the most part applicable in determining whether an unregistered mark is entitled to protection."[53] To be entitled to common law trademark protection, a mark need not be registered but must be used in commerce; the use must be lawful. Trademark rights cannot develop during periods of time when a mark is used in connection with goods which could not be lawfully shipped in interstate commerce.[54] "It is doubtful that the trademark statute—passed pursuant to Congress's power under the Commerce Clause—'was . . . intended to recognize . . . shipments in commerce in contravention of other regulatory acts promulgated [by Congress] under [that same constitutional provision].'"[55] The Trademark Trial and Appeal Board has noted that to permit unlawful use to constitute use, for *registration* purposes, "would to be to place the Patent Office in the anomalous position of accepting as a basis for registration a shipment in commerce which is unlawful under a statute specifically controlling the flow of such goods in commerce."[56] This principle applies by analogy to the development of common law rights in unregistered trademarks.

Quicky's alleges the following facts with respect to the lack of use and the unlawful use of the RooR mark:

> The products at issue in this Action constitute illegal "drug paraphernalia" under the Controlled Substances Act ("CSA"), 21 U.S.C. § 863(d), because they are "items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana...into the human body" (emphasis added). Indeed, the CSA specifically lists "glass pipes," "water pipes," and "bongs" as examples of unlawful drug paraphernalia. 21 U.S.C. § 863(d) (1), (2), and (12).[57]

---

[53] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 768 (1992).
[54] *CreAgri*, 474 F.3d at 630; *In re Taylor*, 133 U.S.P.Q. 490 (T.T.A.B. 1962); *Coahoma Chem. Co., Inc. v. Howerton Gowen Co., Inc.*, 113 U.S.P.Q. 413 (Com'r Pat. & Trademarks 1957)
[55] *CreAgri*, 474 F.3d at 630 (quoting *In re Stellar*, 159 U.S.P.Q. at 51).
[56] *In re Stellar Int'l, Inc.*, 159 U.S.P.Q. 48.
[57] R. Doc. 79 at 1 (First Defense).

The ROOR and ROOR TECH marks asserted against Quicky's are invalid and unenforceable for the following reasons: because the products sold under those marks constitute illegal "drug paraphernalia" under the CSA.

That the ROOR marks are used for goods intended and designed for use with marijuana is demonstrated by, among other things:

a. the entry of ROOR bongs on multiple occasions into the "Cannabis Cup" competition and the participation of RIBV and Birzle in other cannabis related trade shows;

b. promotion of "Cannabis Cup" awards to ROOR-branded products by the owners and licensees of the ROOR trademarks and by vendors of ROOR branded products;

c. videos posted online by users, reviewers, and sellers showing use of ROOR branded products to ingest, inhale, or otherwise introduce marijuana into the human body;

d. the channels of trade for products bearing ROOR and ROOR TECH trademarks include sellers who promote consumption of marijuana;

e. interviews of the owners and licensees of ROOR and ROOR TECH trademarks showing knowledge of use of their for the consumption of marijuana;

f. news articles and published product reviews discussing use of products bearing the ROOR and ROOR TECH marks for purposes of consuming marijuana;

g. admissions under oath by the principal of Sream that ROOR products are used to consume marijuana;

h. the operation of a bong rental store in Amsterdam by RIBV;

i. the use of the term "bong" to refer to products bearing the ROOR and ROOR TECH trademarks (instead of the term "hookah" which is used to refer to pipes used to consume tobacco);

j. tobacco usage patterns among consumers in the United States showing that only a minuscule number of adults currently using tobacco products report use of glass/water pipes for that purpose; and

k. the product packaging used for ROOR rolling papers which specifically instruct that the goods are "<u>NOT</u> for Use with Tobacco."[58]

[58] R. Doc. 79 at ¶ 73.

> Because the goods sold under the ROOR marks are not in lawful use in commerce, the trademarks asserted against plaintiff-in-counterclaim are invalid and unenforceable.[59]
>
> Because the goods sold under the ROOR marks are not in lawful use in commerce, the trademarks asserted against plaintiff-in-counterclaim are deemed abandoned and are therefore invalid and unenforceable.[60]
>
> Further, upon information and belief, the goods described in Registration No. 2307176 are not presently on sale, or were never sold, in the United States. Internet searches for products such as "Roor cigarettes" and "Roor cigars" return no results. Specimens of use submitted to the USPTO for these goods show prices denominated in euros, not dollars. These trademark registrations are abandoned and are therefore invalid and unenforceable.[61]

Quicky's alleges fact which, taken as true, support its claim that there are no valid common law trademark rights in the RooR marks because the RooR marks have not been used in commerce or have not been lawfully used in commerce. Accordingly, the motion to dismiss Quicky's claim for a declaration of invalidity and unenforceability of the common law RooR trademark is denied.

## III. Abuse of Process

In count three, Quicky's asserts a claim for abuse of process against Sream and Roor.[62] Abuse of process is a cause of action recognized at common law and now adopted in Louisiana jurisprudence. Abuse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law.[63] Under Louisiana law, a claim for abuse of process "has two essential elements: (1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper

---

[59] *Id.* at ¶ 74.
[60] *Id.* at ¶ 75.
[61] *Id.* at ¶ 76
[62] *Id.* at ¶¶ 80-97.
[63] *Goldstein v. Serio*, 496 So.2d 412, 415 (La. App. 4 Cir. 1986).

in the regular prosecution of the proceeding."[64] For example, the Fifth Circuit found a plaintiff-seller stated a claim for abuse of process when a prospective purchaser of property filed suit to collect rent from the tenant of the property, seized items on the property, and instituted a possessory action before paying the purchase price for the property.[65]

However, "[a]n improper motive alone is not enough to [constitute] an abuse of process . . . to make out its case, the plaintiff must prove irregular steps taken under cover of the process after its issuance."[66] For example, in *Waguespack, Seago & Carmichael v. Lincoln*, a Louisiana court found general partners in a real estate partnership failed to state a claim for abuse of process when the general partners alleged the limited partners failed to investigate their claims against the general partners for breaches of fiduciary duty, conversion of partnership assets, fraudulent misrepresentations, unfair trade practices, and violations of the RICO statute.[67] The court noted, "[w]hile plaintiffs allege that [the limited partners] filed their third amending petition without the due diligence required by [Louisiana Code of Civil Procedure] Article 863 B, the [general partners] have not alleged any facts that substantiate the irregularity of the process itself."[68] The court stated that, absent a showing that the petition was improperly served upon a nonparty or other similar scenario, the general partners could not allege an irregularity in the process itself.[69]

---

[64] *No Drama, LLC v. Caluda*, 15-211 (La. App. 5 Cir. 10/14/15), 177 So. 3d 747, 751.
[65] *Gonsouland v. Rosomano*, 176 F. 481 (5th Cir. 1910).
[66] *Mini-Togs, Inc. v. Young*, 354 So.2d 1389, 1391 (La App. 2 Cir. 1978).
[67] *Waguespack, Seago & Carmichael v. Lincoln* 1999-2016 (La. App. 1 Cir. 9/22/00), 768 So.2d 287, 292.
[68] *Id.*
[69] *Id.*

Similarly, in *Mini-Togs, Inc. v. Young*, plaintiffs failed to state a claim for abuse of process when they alleged an owner of city revenue bonds filed suit to prevent the City of Monroe from transferring its utility system on the grounds that the transfer would cause the bonds to be insecure, when in reality, the bond owner sought to protect the jobs of the current utility workers.[70] The Court reasoned that, although plaintiffs alleged the bond owner had an ulterior purpose motivating the filing of suit, plaintiffs failed to allege any irregularity in the proceedings.[71] Further, in *Umerska v. Katz*, a Louisiana court found no abuse of process after a landlord filed five separate lawsuits attempting to evict his tenant. The court found that in each instance, the eviction suit was warranted, and as a result, the landlord did not commit the tort of abuse of process.[72]

## A.  Ulterior Purpose

Quicky's alleges Roor and Sream's actions in filing suit are not designed to protect the RooR brand but instead are designed to harass, intimidate, and extort settlement payments from convenience store owners.[73] Quicky's alleges "the ulterior purpose of the Roor infringement suits is to use the courts to extort money from small businesses."[74] Quicky's alleges this ulterior motive is evidenced by the fact that Sream and Roor do not send cease and desist letters, do not take action against wholesale distributors, and have not sought to protect the importation of counterfeit goods bearing the RooR mark.[75] Quicky's has properly alleged facts to support the first element of its claim for abuse of process: that Sream and Roor use judicial process for an ulterior purpose.

---

[70] *Mini-Togs*, 354 So.2d at 1391.
[71] *Id.*
[72] *Umerska v. Katz*, 477 So.2d 1252 (La. App. 4 Cir. 1985).
[73] R. Doc. 79 at ¶ 84.
[74] *Id.* at ¶ 93.
[75] *Id.* at ¶ 85.

## B. Improper Willful Act

Quicky's alleges Sream and Roor "have engaged in a pattern of misuse of the judicial process to obtain results not proper under the law, namely payments that they are not lawfully entitled to."[76] Quicky's alleges Roor and Sream have filed hundreds of suits across the country against small convenience store owners, claiming exorbitant amounts of damages and calculating settlement demands at levels less than the cost of defense but greater than the amount of any reasonable award.[77] Quicky's alleges Sream and Roor have engaged in the following willful acts that are not proper in regular process:

a. Sream and RIBV have wrongfully asserted invalid and unenforceable trademarks against Quickys.

b. Sream and RIBV have falsely represented to the court that Sream is the "exclusive licensee" of the ROOR mark in the United States. This is not true. German-made ROOR products are widely available in the United States, a circumstance not possible if Sream has exclusive rights in the U.S. territory.

c. Sream and RIBV have falsely represented to the court that they have a legitimate license agreement, when in fact, that license agreement is a sham, for the unlawful purpose of misrepresenting the true country-and company-of origin of "ROOR" goods sold to American consumers.

d. Sream has falsely presented itself as the marketer and distributor of ROOR products in the United States, when, in fact, there is a web of companies other than Sream fulfilling these roles.

e. Sream and RIBV have falsely characterized their products are being intended for use only with tobacco products, when, in fact, ROOR products are widely promoted for use in ingesting marijuana.

f. The willfulness of the counter-defendants' unlawful assertion of trademark rights for marijuana-associated drug paraphernalia is demonstrated by the fact that the illegality and unenforceability of such trademarks has been widely reported in the general press, in the cannabis press, in news articles about Sream's trademark litigation, in law review articles, and in countless legal education seminars by such main-stream

---

[76] *Id.* at ¶ 82.
[77] *Id.* at ¶¶ 83-84.

organizations as the American Bar Association and the Federal Bar Association.

g. Sream and RIBV have falsely asserted trademark registrations against for products that have never existed such as ROOR-branded cigarettes and cigars. These are phony trademarks.

h. Sream and RIBV has also falsified their injuries in their pleadings.

i. The contracts that give Sream and RIBV standing are contra bonos mores and unenforceable.[78]

Accepting these facts as true, Quicky's fails to state a claim for abuse of process. None of the alleged acts constitutes an irregularity in the process itself or an act not proper in the regular prosecution of the proceeding. Quicky's generally alleges Sream and Roor "wrongfully assert" claims and "falsely represent" things to the court. This is similar to the limited partners in *Waguespack, Seago & Carmichael v. Lincoln*, who allegedly filed suit against the general partners without properly investigating their claims. What Quicky's appears to complain of is "not based on any perversion of any process but simply the filing of the suit,"[79] much like the bond owner in *Mini-Togs, Inc. v. Young* or the landlord in *Umerska v. Katz*.[80] Quicky's has failed to allege facts to support the second element of its claim for abuse of process. As a result, the motion to dismiss Quicky's claim for abuse of process is granted.

## CONCLUSION

**IT IS ORDERED** that the Motion to Dismiss[81] filed by Sream Inc. and Roor International BV is **GRANTED IN PART AND DENIED IN PART**. The counter-claim asserted by Quicky's Discount for abuse of process is dismissed with prejudice for failure

---

[78] *Id.* at ¶ 93.
[79] *Mini-Togs*, 354 So. 2d at 1391.
[80] *Id.*; *Umerska*, 477 So.2d 1252.
[81] R. Doc. 90.

to state a claim. The counter-claims for cancellation of the trademarks and a declaration of invalidity remain.

**New Orleans, Louisiana, this 15th day of May, 2019.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**